IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GEORGE TAYLOR,

                Plaintiff,

v.

JON LITSCHER, MICHAEL DITTMAN,
and SERGEANT DOYLE,

                Defendants.

OPINION & ORDER

18-cv-63-jdp

---

Pro se plaintiff George Taylor is an inmate at the Columbia Correctional Institution (CCI). He alleges that defendants Warden Michael Dittman and Wisconsin Department of Corrections (DOC) Secretary Jon Litscher maintained a policy of having correctional officers, rather than medical staff, distribute prisoners' medications, and that this policy led defendant Sergeant Doyle to provide Taylor the wrong medications. Dkt. 1-2. Taylor seeks a preliminary injunction barring correctional officers from distributing medication at the prison and ordering that only licensed nurses may distribute medication. Dkt. 3. I will deny the motion.

ANALYSIS

To obtain a preliminary injunction, a plaintiff must show that (1) he will suffer irreparable harm before the final resolution of his claim without a preliminary injunction; (2) traditional legal remedies are inadequate; and (3) his claims have some likelihood of success on the merits. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 323–24 (7th Cir. 2015). Here, Taylor is not entitled to an injunction because he has not shown that he will face irreparable harm without an injunction. Although officers have made several mistakes while distributing his

medication, Taylor must also show that he has no other way to avoid harm from these mistakes. The evidence shows that Taylor can check his medications before receiving them and thereby avoid taking the wrong medication.

The current policy requires officers to distribute certain medications, particularly psychotropic medications. Dkt. 7, ¶ 8. Such controlled medications are packaged in labeled blister packs. *Id*. When an officer distributes controlled medication, the officer carries both the inmates' blister packs and the inmates' medication treatment records. Dkt. 7-2, at 3. Before giving the medication to any individual inmate, the officer is required to compare the blister-back label against the inmate's medication treatment record, to ensure that the blister-pack label has the correct inmate name, medication, dose, time, and route. Then, the officer shows the blister-pack label to the inmate and asks the inmate to confirm that the inmate name, medication, dose, time, and route are correct. The inmate may refuse the medication, and the officer cannot force the inmate to ingest it. Dkt 7, ¶ 14. All inmates at CCI have been notified that they should check the label before accepting medication, and that if they have a concern about the medication they should tell the unit officer before ingesting it. Dkt. 7-4, at 2.

Taylor does not dispute that these procedures are in place, that he is aware of these procedures, or that he can follow them. Rather, Taylor states that officers routinely "cut corners" when following the procedures. Dkt. 10, ¶ 2. However, Taylor only alleges that one officer, defendant Sergeant Doyle, actually violated the policy while giving him medication. Dkt. 1-2, ¶ 6. This single incident may demonstrate reckless behavior by Doyle, but it does not show that the policy as a whole is flawed. And it does not show that Taylor cannot protect himself.

In many of the incidents that Taylor describes, he does not explain how the error occurred or why he would not have had an opportunity to check the blister-pack label. But in the two most recent incidents, Taylor describes the exact mistakes that officers made. Dkt. 10, ¶ 7–8; Dkt. 10-3; Dkt. 10-4. And in both incidents, Taylor recognized that the officer made a mistake before he took the medication. On July 14, 2018, an officer misidentified Taylor's cellmate and gave the cellmate Taylor's medication. Taylor recognized the mistake and notified the officer. On July 17, 2018, Taylor alleges that an officer did not display the entire label on the blister pack. But Taylor does not explain why, if he could not see the label, he accepted the medication. Although he knew the officer made a mistake, Taylor waited until after he had ingested the medication to tell the officer about the error. Afterwards, Taylor received a conduct report for intentionally abusing medication, Dkt. 10-4, and the report documents state that Taylor recognized that the pills looked different than his usual medication, but that Taylor ingested them anyway. Taylor claims that the conduct report was written in retaliation for filing this motion. But Taylor does not argue that the underlying facts in the report—that Taylor recognized that the pills were not his—are incorrect. And even if I ignore the report and limit my analysis to the facts in Taylor's declaration, that still does not explain why Taylor accepted the medication when he did not see his name on the blister pack.

It is not clear why Taylor would ingest medication that he knows does not belong to him—Taylor has not provided any evidence showing that officers are forcing him to ingest medication in violation of the policy, nor any evidence showing that Taylor is unable to recognize whether the medication he is given is correct. By simply checking his medication and refusing incorrect medication, or by refusing medication if officers fail to display the blister pack, Taylor can avoid irreparable harm without the need for an injunction.

Taylor contends that he is entitled to an injunction for the same reasons that a judge in the Eastern District of Wisconsin granted an injunction in *Flynn v. Doyle*, 630 F. Supp. 2d. 987 (E.D. Wis. 2009). In *Flynn*, the court granted a preliminary injunction requiring nurses, rather than correctional officers, to hand out medications at Taycheedah Correctional Institution. But *Flynn* differs from this case in two important ways. First, the preliminary injunction only came after three years of litigation. By that point, plaintiffs had substantial evidence demonstrating the specific risks caused by Taycheedah's medication administration system and demonstrating that defendants were aware of those risks. Among the evidence provided by plaintiffs was a report from the DOC that (1) recognized that correctional officers often did not correctly distribute medication; and (2) found that the DOC should develop a long-term, viable alternative to the practice of correctional officers distributing medications. *Id.* at 991. This report was central to plaintiffs' claims. *Id.* at 992. The DOC has since changed its policies for training staff to administer medication. Dkt. 7-2. But Taylor has not provided any evidence like the report in *Flynn* regarding the current policy. Second, *Flynn* was a class-action lawsuit and plaintiffs represented all prisoners incarcerated at Taycheedah. An injunction was necessary not to protect an individual inmate, but to protect a class of inmates facing harm at Taycheedah. Here, Taylor proceeds as an individual, and he cannot assert constitutional rights on behalf of other inmates at CCI. An injunction like the one in *Flynn* would be too broad to address Taylor's claims when Taylor is personally capable of avoiding harm without an injunction.

Taylor might ultimately succeed at summary judgment or at trial. To prevail on his claim that the policy of having officers distribute medication violates the Eighth Amendment, Taylor will need to show (1) that the policy poses a substantial risk of serious harm to him; (2)

prison administration was aware of the risk created by the policy; and (3) defendants nonetheless failed to take reasonable steps to abate the risk. Taylor may succeed on his deliberate-indifference claim against Sergeant Doyle if the evidence shows that Doyle intentionally or recklessly gave Taylor the wrong medication. Dkt. 5 at 3. Finally, unless defendants show that Taylor failed to comply with Wisconsin's notice of claim requirements, Taylor may succeed on his state-law negligence claims.

And at summary judgment or at trial, defendants will need to provide more convincing arguments than they did in response to this motion. Defendants main argument is that these are isolated mistakes, and defendants cite *Robbins v. Pollard,* No. 16-cv-1128, Dkt. 48 (E.D. Wis. Dec. 11, 2017), to argue that a policy of having officers distribute medication does not necessarily show deliberate indifference. But some such policies *do* amount to deliberate indifference. *See e.g. Flynn*, 630 F. Supp. 2d. 987. It depends upon the facts of the case. The plaintiff in *Robbins* did not have evidence to show whether the policy at Waupun Correctional was actually causing inmates to receive incorrect medication. *Robbins,* No. 16-cv-1128 at 4. At this point, I do not know if Taylor's allegations are isolated incidents or if they are evidence of a larger problem with the policy at CCI. I already have two other cases before me regarding the distribution of incorrect medication at CCI. *See Talley v. Litscher*, No. 17-cv-670 (W.D. Wis. filed Aug. 29, 2017); *Goodwin v. Zerbe*, No. 17-cv-844 (W.D. Wis. filed Nov. 7, 2017). The parties have not provided any evidence regarding the frequency or severity of errors under the policy. Instead, defendants assert that errors will decrease next year, when the prison implements a *different* policy. Taylor might discover and adduce evidence showing that the current policy poses a risk of substantial harm, and that prison officials were aware of that risk.

ORDER

IT IS ORDERED that plaintiff's motion for a preliminary injunction, Dkt. 3, is DENIED.

Entered August 27, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge