IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GEORGE TAYLOR,

                          Plaintiff,

   v.                                                  OPINION and ORDER

JON LITSCHER, MICHAEL DITTMAN,
SERGEANT DOYLE, BRITTANY K. HIBMA,                  18-cv-63-jdp
MICHAEL STEPHENS, and THOMAS MITCHELL

                          Defendants.

---

Pro se plaintiff George Taylor is an inmate at Columbia Correctional Institution (CCI). He alleges that defendants Warden Michael Dittman and former Wisconsin Department of Corrections (DOC) Secretary Jon Litscher maintained a policy of having correctional officers, rather than medical staff, distribute prisoners' medications, and that this policy led to defendants Sergeant Doyle, Brittany Hibma, and Michael Stephens providing Taylor the wrong medications or dosages of medication. Taylor also says that on one occasion when he took the wrong medication, defendant Thomas Mitchell ignored his request for follow-up medical attention.

Taylor has four pending motions. The first two are closely related. Taylor renews his motion for a preliminary injunction barring correctional officers from distributing medication at the prison and ordering that only licensed nurses may distribute medication. Dkt. 40. Taylor has also filed a motion to consider additional evidence in support of his motion for preliminary injunction. Dkt. 65. I will grant his motion to consider the additional evidence. I previously denied Taylor's motion for preliminary injunction because I concluded that Taylor had not shown that he would face irreparable harm if officers continue to distribute medication.

Dkt. 17. Taylor has significantly expanded the record and added evidence in support of his claims against defendants for past harm. But Taylor has still not shown that he will face irreparable harm in the future without an injunction, so I will again deny the motion.

Second, Taylor has filed an unrelated motion for a temporary restraining order allowing him to keep his albuterol inhaler in his cell while in restricted housing. Dkt. 66. I will deny that motion because it is unrelated to the claims in this case.

Third, Taylor has filed a motion to add 16 additional defendants to the case. Dkt. 80. I will deny the motion because it is too late in the proceedings to join so many new defendants. Taylor may bring his claims against these defendants as a separate lawsuit.

## ANALYSIS

### A. Motions for injunctive relief

#### 1. Medication distribution policy

A preliminary injunction is "an extraordinary and drastic remedy" that should be granted only when the movant carries the burden of persuasion by a "clear showing." *Boucher v. School Bd. of Greenfield*, 134 F.3d 821, 823 (7th Cir. 1998) (citations omitted). And injunctions that order a defendant to take affirmative action, rather than merely refrain from an action, are "cautiously viewed and sparingly issued." *Knox v. Shearing*, 637 F. App'x 226, 228 (7th Cir. 2016) (quoting *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997)). To obtain an injunction, Taylor must show that (1) he will suffer irreparable harm before the final resolution of his claim without a preliminary injunction; (2) traditional legal remedies are inadequate; and (3) his claims have some likelihood of success on the merits. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 323–24 (7th Cir. 2015). Because Taylor is proceeding as an individual,

Taylor must show that he personally will suffer harm if an injunction is not granted—he cannot assert constitutional rights on behalf of other inmates at CCI.

Taylor has not shown that he will face irreparable harm without an injunction. Taylor has submitted documents suggesting that DOC officials were aware that correctional officers lack the medical training to appropriately administer medication, and that having correctional officers distribute medication was an inherently "unsafe and unhealthy practice." Dkt. 57, ¶ 20. And Taylor has shown that on numerous occasions he (and other inmates at CCI) received the wrong medication or wrong dosage of medication from officers. This evidence supports Taylor's claim that he was harmed in the past by CCI's policy of having officers distribute medication. But on December 3, 2018, CCI implemented a new electronic medical records system (EMR system) that decreases the chance of continued medication errors.

The EMR system requires each inmate to wear an identification tag with a barcode on it. Each inmate's medication has a matching barcode. Nurses prepare the medication and sort it into medication carts for different units. Then, during medication pass, inmates report to the medication cart in their unit. An officer scans the inmate's identification tag, retrieves the appropriate medication, and then scans the barcode on the medication. If the barcodes match, the officer gives the inmate the medication and the medical record is updated to reflect that medication was administered. In the restrictive housing unit, where inmates cannot leave their cells, officers use a wireless version of the scanner to distribute medication at each inmate's cell door.

The EMR system is not perfect—correctional officers still hand out medication, even though the DOC has recognized that it is better to have nurses do it. And because the scanners used in general population are not wireless, the prison needs to revert to the old, paper system

when the prison is on lockdown. But the Eighth Amendment sets only the minimum standards that prison officials are required to follow. It does not require prisons to implement the best possible practices. And on a motion for preliminary injunction, relief is further limited by the Prison Litigation Reform Act, which states that injunctive relief to remedy prison conditions must be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012). An order requiring nurses to distribute medication would significantly intrude on the prison's operations; CCI would need to either reassign nurses from other duties or hire additional nursing staff just to deliver medication. But the EMR system addresses the risk that officers will distribute the wrong medication without requiring the prison to completely overhaul its day-to-day operations or make staffing changes.

Taylor has not received the wrong medication since the EMR system was implemented, but he says that officers have accidentally given his medication to his cellmates on two occasions.[1] In their declarations, both of these cellmates say that they did not see Taylor's name on the label until after they had already ingested the medication. Dkt. 49 and Dkt. 50. But they do not explain why, if they were able to check the name on the medication, they could not check it before accepting it.

More important, Taylor does not explain why *he* would not be able to check his medication before accepting it. I denied Taylor's previous motion for preliminary injunction in

---

[1] It's not clear if the EMR system was used during these incidents. Both incidents occurred when the prison was on lockdown, and it's disputed whether Taylor was in restricted housing, where CCI has wireless scanners for the EMR system, or in general population, where CCI temporarily reverted to the paper system.

4

part because I concluded that Taylor was able to recognize the label on his medication, and that he could avoid irreparable harm by refusing to accept medication that did not belong to him. Taylor argues that if he were to refuse medication, he would suffer from pain because he would not receive his prescribed pain medication. But Taylor has not provided any evidence that officers will refuse to give him the correct medication if he notifies them that they made a mistake.

Taylor contends that even if he does not receive the wrong medication, he is still likely to be harmed due to documentation errors. Even with the EMR system, officers frequently do not update Taylor's medication administration records to indicate when he took his medicine. Dkt. 57, ¶¶ 50–51; *see also* Dkt. 42-1, at 207–67. (It's not clear whether this means that the officers distributed Taylor's medication without scanning it, or whether medication administration records must be separately updated from the EMR records.) In addition, the EMR system became temporarily unavailable for three weeks in January and February when CCI was on lockdown, and during that time, officers did not complete any documentation regarding medication.

Taylor argues that in *Flynn v. Doyle,* 630 F. Supp. 2d 987, 991 (E.D. Wis. 2009), the court ordered an injunction barring correctional officers from distributing medication in part because officers did not properly document medication administration. But, as I explained in my previous order, *Flynn* was a class action. The court was considering the risk of harm faced by *all* inmates at Taycheedah Correctional Institution due to frequent documentation and distribution errors. In that context, there was a substantial risk that at least some of the inmates at Taycheedah Correctional Institution would be harmed by later treatment mistakes due to incomplete medical documentation. But in this case, Taylor is proceeding as an individual, so

5

he needs to show that he personally will be harmed by the lack of documentation. Taylor has not provided any information about his medical issues, the medication he has been prescribed, or how his treatment will be adversely affected by documentation errors. There is no evidence that Taylor, or anyone else at CCI, received the wrong medication or was denied medication because an officer failed to update his records.

At trial or summary judgment, Taylor may prevail on his claim that defendants were deliberately indifferent in administering CCI's medication policies, and that he was harmed by those policies. But because Taylor has not shown that he will be irreparably harmed in the future without an injunction, I will deny his motion.

2. **Access to inhaler**

Taylor's second motion asks the court to order defendants to allow Taylor to keep his inhaler in his cell. Taylor says that the DOC has a policy which allows inmates to keep "rescue inhalers" in their cells, but that CCI officials took away his inhaler when they placed him in restrictive housing. *See* Dkt. 73-1, at 2 (DAI 500.00.02 allows inmates to keep rescue inhalers in their possession at all times, including when they are housed in restrictive housing). Defendants concede that CCI officials confiscate all inhalers in restrictive housing, and that this practice violates DOC policy. But they say that they need to take inhalers away from inmates in restrictive housing because inmates use the inhalers to harm themselves.

I will deny Taylor's motion because CCI's practice of confiscating inhalers from inmates in restrictive housing is unrelated to Taylor's claims against the defendants in this case. Taylor says that his motion is related to his other claims because Taylor alleges that a policy is being violated, and he has also alleged that some of the defendants have violated prison policies. But just because there is a similarity between two claims does not mean that they are related. Here,

the claims involve different defendants and different policies. If Taylor wishes to challenge CCI's practice of confiscating inhalers in the restricted housing unit, he will need to file a new complaint and bring the claim as a separate lawsuit.

I also note that Taylor does not appear to be in any danger because he cannot keep his inhaler in his cell. The inhaler is kept within the restricted housing unit and can be accessed by correctional officers if there is an emergency. Taylor says that on two occasions, officers refused to get his inhaler when he needed it, but one of these incidents took place almost a year ago, outside the restricted housing unit, Dkt. 77, at 3–6, and the other incident was not an emergency. *Id.* at 1–2. And even if CCI officials are violating DOC policy, "the mere fact that state rules or statutes are violated does not in and of itself amount to a constitutional violation or give rise to an actionable § 1983 claim." *Whitman v. Nesic*, 368 F.3d 931, 935 n.1 (7th Cir. 2004), *as amended* (June 4, 2004). This court has seen several lawsuits from prisoners who broke their inhalers and used the metal to cut themselves, *see, e.g., Brown v. Chinias*, No. 18-cv-340-jdp (W.D. Wis. May 8, 2018); *Goodvine v. Richards*, No. 17-cv-187-wmc (W.D. Wis. Mar. 10, 2017), and CCI's policy of keeping inhalers in the restrictive housing unit, but outside of the prisoners' cells, may be a reasonable way to deal with the problem.

## B. Motion to join defendants

Taylor moves to add 16 new defendants to the case. Dkt. 80. He alleges that all of the defendants either gave him the wrong medication or were deliberately indifferent to his requests for medical care after he took the wrong medication. Taylor asserts claims for violation of the Eighth Amendment and negligence under Wisconsin law.

Taylor recently filed two other lawsuits that asserted claims regarding the prison's medication distribution system. To streamline the proceedings, I closed those two cases and

7

joined the defendants in this case. Dkt. 63 and Dkt. 78. Taylor says that based on my previous orders, he believes that I would also want him to join these 16 new defendants to this case. Normally, Taylor would be correct—his claims against these defendants substantially overlap with his claims against the existing defendants. But it is far too late in the proceedings to add all these defendants. Motions for summary judgment are due in less than a month, and if 16 new defendants were added to the case it would require the court to postpone the trial.

So I will deny the motion. If Taylor wishes to proceed against these defendants, he will need to file a new lawsuit.

ORDER

IT IS ORDERED that:

1. Taylor's motion to consider additional evidence, Dkt. 65, is GRANTED.

2. Plaintiff George Taylor's second motion for preliminary injunction prohibiting correctional officers from distributing medication, Dkt. 40, is DENIED.

3. Taylor's motion for temporary restraining order allowing Taylor to keep his inhaler in his cell while in restrictive housing, Dkt. 66, is DENIED.

4. Taylor's motion to join additional defendants, Dkt. 80, is DENIED.

Entered June 24, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge